IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PENN STAR INSURANCE COMPANY, | CV 13–223–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| REAL ESTATE CONSULTING SPECIALISTS, INC., | |
| Defendant. | |
| and | |
| CORRINE DEGOLIER, TRUST PROTECTOR of the LEANNE HART TRUST, on behalf of her natural sister, LEANNE HART | |
| Defendant-Intervenor. | |

Before the Court are the parties cross-motions for summary judgment. Jurisdiction is based on diversity. For the reasons explained, the Court grants Defendant's motion and denies Plaintiff's motion.

-1-

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Introduction**

This declaratory action stems from a complaint filed by Defendant-Intervenor Corrine Degolier, trust protector of the Leanne Hart Trust, ("Hart") in Montana state district court against Defendant Real Estate Consulting Specialists, Inc. ("RECSI"). The state court complaint alleges that Hart, a resident of an apartment managed by RECSI, suffered injuries as a result of RECSI's "negligence in failing to perform routine maintenance duties at the apartments." (Doc. 7-2 at 3.) Plaintiff Penn Star Insurance Company ("Penn") insured RECSI under a commercial general liability policy. Penn filed the instant action seeking a judicial declaration that it has no duty to defend or indemnify RECSI for the claims alleged by Hart.

**II.    The Underlying Complaint**

Hart's complaint in state court alleges that Leanne Hart, a resident of an apartment managed by RECSI, was injured when, while taking a shower at the apartment, she suffered a seizure, struck the temperature control lever, and was scalded by the hot water that sprayed from the showerhead. Hart's complaint alleges that RECSI was responsible for "all day-to-day details associated with the apartment complex" and that RECSI was "responsible for all day-to-day

maintenance and other duties concerning the property." (Doc. 7-2 at 1-2.) Hart's complaint alleges that "had [RECSI] been properly performing its routine maintenance duties regarding the apartment, it would have ensured that the temperature of the water was 120º F or less." *Id.* Ultimately, the complaint alleges that Hart's injuries resulted from RECSI's "negligence in failing to perform routine maintenance duties at the apartment." *Id.*, at 3.

### III. The Commercial General Liability Insurance Policy

At the time of Hart's injuries, RECSI was a Named Insured under a Commercial General Liability Policy issued by Penn ("the Policy"). The Policy's "Insuring Agreement" provided:

> We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

(Doc. 7-1 at 26.) The Insuring Agreement further provided that insurance is applicable if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'." The Policy defined the "coverage territory" as "the United States of America (including its territories and possessions), Puerto Rico and Canada." (Doc. 7-1 at 38.) The Declarations page and the Supplemental Location Schedule, under the remark "Locations of all

premises you Own, Rent, or Occupy", lists several addresses in Kalispell, none of which is the address where Hart's injuries are alleged to have occurred.[1]

The Policy contains an endorsement that limits coverage to designated operations. This endorsement states that "[t]his insurance applies only to 'bodily injury' . . . arising out of only those operations designated, listed and described in the Declarations . . ." (Doc. 7-1 at 59.) The operations designated in the Declarations are described as "Real Estate Property managed." (Doc. 7-1 at 4.) The Policy also contains an endorsement entitled "Real Estate Property Managed", which provides that "[w]ith respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you." (Doc. 7-1 at 52.)

The Policy also contains a "Designated Professional Services" endorsement. This endorsement provides that "[t]his insurance does not apply to 'bodily injury' . . . due to the rendering of or failure to render any professional service." (Doc. 7-1 at 46.) This exclusion applies "[w]ith respect to any professional services shown in the Schedule . . ." *Id.* The Schedule, under the remark "Description of

---

[1] The Policy contains an exclusion for "property damage" to property owned, rented, or occupied by RECSI.

-4-

Professional Services", lists "Real Estate Property Manage & Consulting." *Id.*

In its reservation of rights letter to RECSI and here, Penn asserts that there is no coverage for Hart's claim against RECSI for two reasons. First, Penn asserts that, pursuant to the Declarations page and Supplemental Location Schedule, the Policy only insured against losses that occurred at the limited, specific locations listed on the Declarations page and Supplemental Location Schedule.[2] Second, Penn asserts that there is no coverage because the Policy's "Designated Professional Services" endorsement unambiguously excludes coverage for the claims alleged by Hart.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant's burden is satisfied when

---

[2] 280-294 4th Avenue WN and 376 West Washington Street, Kalispell, MT.

the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

### APPLICABLE LAW

A federal court sitting in diversity applies the substantive law of the forum state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, the Court applies Montana law.

### I. Interpretation of Insurance Contracts

In Montana, the interpretation of an insurance contract is a question of law. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000). In interpreting an insurance contract, the court "will read the insurance policy as a whole, and will if possible, reconcile its various parts to give each meaning and effect." *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998). The language of an insurance policy governs if it is clear and explicit. *Marie Deonier & Assoc.*, 9 P.3d at 630.

"Any ambiguity in an insurance policy must be construed in favor of the

insured and in favor of extending coverage." *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896 (Mont. 2003). "An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations." *Id.* "Whether an ambiguity exists is determined through the eyes of 'a consumer with average intelligence but not trained in the law or insurance business.'" *Id.* (quoting *Holeman*, 961 P.2d at 119).

"[E]xclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous." *Leibrand v. National Farmers Union Property and Cas. Co.*, 898 P.2d 1220, 1224 (Mont. 1995) (citing *Aetna Ins. Co. v. Cameron*, 633 P.2d 1212, 1214 (Mont. 1981)). "[E]xclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.* 206 P.3d 919, 929 (Mont. 2009) (quoting *Wellcome v. Home Ins. Co.*, 849 P.2d 190, 192 (Mont. 1993)).

## II.    The duty to defend

"The duty to defend is independent from and broader than the duty to indemnify created by the same contract." *Farmers Union Mut. Ins. v. Staples*, 90 P.3d 381, 385 (Mont. 2004) (citing *St. Paul Fire & Marine Ins. Co. v. Thompson*,

433 P.2d 795, 599 (Mont. 1967)); *Grindheim v. Safeco Ins. Co.*, 908 F.Supp. 794, 800 (D. Mont. 1995). "The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *Id.*

"When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Id.* (citing *Portal Pipe v. Stonewall*, 845 P.2d 746, 749 (Mont. 1993); *Grindheim*, 908 F.Supp at 805). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id.* (citing *Insured Titles, Inc. v. McDonald*, 911 P.2d 209, 212 (Mont. 1996)).

### ANALYSIS

As noted above, Penn's motion for summary judgment is premised on two grounds. First, Penn contends that there is no coverage and no duty to defend against the Hart lawsuit because Hart was injured at an uninsured location. Second, Penn contends that there is no coverage and no duty to defend because the Policy's Designated Professional Services endorsement clearly and unambiguously excludes coverage for RECSI's alleged failure to the perform

routine maintenance as alleged in Hart's complaint. Neither contention is persuasive.

I.      **The Location of the Injury**

In contending that there is no coverage for the location of the injury, Penn points to the Declarations page and the Supplemental Locations Schedule, both of which list locations which purport to describe "all premises you Own, Rent, or Occupy." (Doc. 7-1 at 4, 5.) Penn, however, can point to no language anywhere in the Policy which limits coverage for "bodily injury" to the locations listed on the Declarations page and Supplemental Locations Schedule. Montana law is clear that exclusions from coverage cannot be accomplished without clear and explicit language manifesting an intent to exclude coverage. *United Pacific Ins. Co. v. First Interstate Bancsystems of Montana, Inc.*, 664 F.Supp. 1390, 1394 (D. Mont. 1988). In this case, the Policy lacks any language manifesting an intent to limit coverage for "bodily injury" to certain specified locations. The coverage for "bodily injury" extends to any "'bodily injury . . . caused by an 'occurrence' that takes place in the 'coverage territory'." (Doc. 7-1 at 26.) The "coverage territory" includes all places within the United States. *Id.* at 38.

If Penn intended to limit coverage for "bodily injury" to the locations listed in the Declarations and Supplemental Locations pages, Penn could have easily

included a designated premises endorsement. The Policy lacks any such endorsement or other language of limitation. Penn's contention that coverage for "bodily injury" was limited to locations which are merely identified as those which RECSI owned, rented or occupied is therefore unavailing. This is not a novel concept. *See e.g. Wamsley v. Nodak Mut. Ins. Co.*, 178 P.3d 102, 112 (Mont. 2008) (holding that insurance applies within defined coverage territory "absent any limitations of coverage"); *GRE Ins. Group v. Metro. Boston Housing Patnership, Inc.*, 61 F.3d 79, 81-81 (1st Cir. 1995) (holding the same); *Allcity Ins. Co. v. Borrello* 798 N.Y.S.2d 121, 123 (N.Y. 2005) (holding the same).

Viewing the Policy as a whole, it appears that identifying the locations that RECSI owned, rented or occupied was not for the purpose of limiting coverage for "bodily injury", but was intended to give effect to the Policy's exclusion for "property damage", which excludes coverage for "property damage" to all property owned, rented or occupied by RECSI. (See Doc. 7-1 at 29.)

Penn has failed to show that there is no coverage for the location of the injury.

## II.   The Designated Professional Services Endorsement

Penn next contends that there is no coverage or duty to defend RECSI against Hart's claims because the Policy's Designated Professional Services

endorsement excludes coverage for the professional services implicated in Hart's complaint. This contention is without merit, particularly in light of the Montana Supreme Court's recent holding in *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355-357 (Mont. 2013). Though *Newman* is, by all appearances, entirely on point, Penn makes no attempt to distinguish it. Because *Newman* is binding authority in this diversity suit, *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001), and because the Court concludes the weight of the authority supports RECSI, Penn's arguments based on contrary out of jurisdiction cases are unavailing.

In *Newman*, the Montana Supreme Court dealt with a professional services exclusion, issued by the Scottsdale Insurance Company ("Scottsdale"), that was nearly identical to the one involved in this case. Identical to the language in the Policy at issue here, the Scottsdale professional services exclusion stated: "With respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury' . . . due to the rendering or failure to render any professional service." *Newman*, 301 P.3d at 351. The Schedule of the Scottsdale policy described professional services as "any and all professional exposures." Id.

In *Newman*, Scottsdale contended that under the professional services exclusion it had no duty to indemnify or defend its insured against a complaint alleging negligence against the insured for its operations as "the marketing arm [of

an organization], directing parents of troubled teens to facilities . . . operated . . . as part of a civil conspiracy to profit at the expense of the safety and heath of children." *Id.*, 301 P.3d at 356. The Court concluded that the allegations against the insured did "not suggest the exercise of 'trained judgment' or 'specialized learning' unique to 'professional services', as Scottsdale argues; rather these allegations raise the specter of an injury caused by an occurrence resulting from non-professional services." *Id.*

The Court in *Newman* further held that Scottsdale's failure to define the terms "professional," "professional services," or "professional exposures," "renders the coverage confusing and ambiguous." *Id.* Finally, the Court held that if it "accepted[ed] Scottsdale's interpretation of policy coverage, it appears coverage is illusory." *Id.* In so holding, the Court noted that under Scottsdale's interpretation all of the insured's employees must be regarded as "professionals" and that, given the nature of the insured's business, "it is difficult to imagine a scenario under which coverage would be extended." *Id.*

Here, as in *Newman*, the Court confronts a Designated Professional Services exclusion where the terms "professional" and "professional services" are not specifically defined, at least not in the definitions section of the Policy. Penn contends, however, that the description of professional services that appears in the

Schedule adequately defines the professional services excluded. The Schedule describes professional services as "Real Estate Property Manage & Consulting" (Doc. 7-1 at 46), which is generally a description of RECSI's business operations. The Court is not persuaded that this description sufficiently defines the critical terms "professional" and "professional services" so as to exclude coverage for the claims alleged by Hart.

While the description of professional services provided by the Schedule arguably makes the Policy less ambiguous than the policy at issue in *Newman*, it does little to change the ultimate issue, which is whether the language of the professional services exclusion, when strictly construed against the insurer, and read in conjunction with the Policy as a whole, effectively excludes coverage for RECSI's "negligence in failing to perform routine maintenance duties" as alleged in Hart's complaint. (Doc. 7-2 at 3.) Applying the canons of construction applicable to insurance contracts, it is clear that an exclusion which purports to exclude only "professional services," cannot serve to exclude RECSI's potential liability for a failure "to perform routine maintenance duties." *Id.*

As in *Newman*, Hart's allegations merely "raise the specter of an injury caused by an occurrence resulting from non-professional services." *Newman*, 301 P.3d at 356. The term "professional" must be given some effect. In general, the

term "professional" refers to "the exercise of 'trained judgment' or 'specialized learning.'" *See id.* Black's Law Dictionary defines a "professional" as "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." Black's Law Dictionary 1329 (9th Ed. 2009). Nothing in Hart's complaint implicates a failure by a person belonging to a learned profession or whose occupation requires a high level of training and proficiency.

Several cases support the conclusion that a professional services exclusion, in the absence of a specific definition, is inapplicable unless the act complained of requires a professional's specialized knowledge, training, or judgment. *See Admiral Ins. Co. v. Ford*, 607 F.3d 420, 423 (5th Cir. 2010) (holding that phrase following "description of professional services" did not define professional services, but referenced only those services which require specialized knowledge or training); *Bonnie Owen Realty, Inc. v. Cincinnati Ins. Co.*, 670 N.E.2d 1182, 1185-1186 (App. Ct. Ill. 1996) (holding that simple negligence in maintenance of building did not implicate professional services exclusion); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F.Supp.2d 1295, 1305-1306 (holding that real estate agency's alleged negligence in failing to repair damaged door did not implicate professional services exclusion because the omission did not involve a professional judgment call); *GRE Ins. Group*, 61 F.3d at 84-85 (holding that "to

be engaged in professional services 'something more than an act flowing from mere employment or vocation is essential'"). The act complained of in Hart's complaint does not implicate anything more than a failure to perform routine maintenance.

Additionally, the Policy here, when read as a whole, appears in several places to explicitly provide coverage for liability for "bodily injury" arising out of RECSI's management of real estate. For instance, the Policy contains a Real Estate Property Managed endorsement which states that "[w]ith respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you." (Doc. 7-1 at 52.) In another place, the Policy purports to provide coverage for "'bodily injury' . . . arising out of only those operations designated, listed and described." (Doc. 7-1 at 59.) The operations designated are described as "Real Estate Property managed." (Doc. 7-1 at 4.)

The Court must attempt to give effect to all policy provisions, *Holeman*, 961 P.2d at 119, and the Court cannot give effect to Penn's interpretation of the Policy, which excludes coverage for RECSI's management of property, while also giving effect to these other inconsistent provisions. Exclusions cannot "be accomplished by 'bait and switch' tactics." *Hardy*, 67 P.3d at 897. The Policy's internal

inconsistencies provide further reason to conclude that the Designated Professional Services endorsement fails to unambiguously exclude coverage. The professional services endorsement does not relieve Penn of its duty to defend and indemnify RECSI.

IT IS ORDERED that Penn's motion for summary judgment (Doc. 5) is DENIED.

IT IS FURTHER ORDERED that RECSI's motion for summary judgment (Doc. 10) is GRANTED. Penn has a duty to defend RECSI for Hart's claims against RECSI. As alleged in Hart's complaint, the Policy provides liability coverage for Hart's claims against RECSI.

The Court makes no determination about whether Penn will ultimately have a duty to indemnify RECSI because ruling on that issue is not yet ripe. *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363-366 (Mont. 2005).

This case is CLOSED.

DATED this 19th day of February 2014.

Dana L. Christensen, Chief District Judge
United States District Court